IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALVARO SEGURA-GOMEZ, 43814-177,<br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | §<br>§<br>§   3:14-CV-2304-B<br>§   3:11-CR-0011-B(02)<br>§<br>§<br>§<br>§ |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

### I. Procedural Background

Before the Court is Petitioner's petition to vacate, set-aside or correct sentence pursuant to 28 U.S.C. § 2255. For the foregoing reasons, the Court recommends that the petition be denied.

On April 12, 2012, Petitioner pled guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). The Court sentenced him to 140 months in prison. On November 5, 2013, the Fifth Circuit Court of Appeals dismissed his appeal. *United States v. Segura-Gomez*, No. 13-10008 (5th Cir. Nov. 5, 2013). On February 24, 2014, the Supreme Court denied his petition for writ of certiorari. *Segura-Gomez v. United States*, 134 S.Ct. 1349 (2014).

On June 24, 2014, Petitioner filed the instant § 2255 petition. He argues he received

ineffective assistance of counsel when:

1. Counsel failed to object that the sentence enhancement violated the Ex Post Facto Clause; and

2. Counsel failed to object that the drug quantities were incorrect.

## II. Factual Background

The following factual background is taken from Petitioner's factual resume and the PSR.

During its investigation into the La Familia drug cartel, the DEA identified Petitioner's brother Jorge as a supplier of cocaine to defendants in a related case. In August, 2011, agents observed Jorge attempt to deliver two kilograms of cocaine that he got from a house on Seedling Lane. Although Jorge abandoned that delivery when he detected the law-enforcement surveillance, in October of 2011 agents watched as he completed a delivery of two kilograms of cocaine.

Petitioner rented and lived at the Seedling Lane stash house along with Javier Cruz, another defendant. Agents began surveillance of the house, and on December 2, 2011 they searched trash from the house and found drug ledgers regarding two marijuana transactions involving a total of 18 pounds of marijuana.

On December 14, 2011, agents executed a search warrant at the Seedling Lane house. In the living room they found 436 grams of cocaine and $362,305 hidden in the television in a plastic bag. In one bedroom they found drug ledgers, a shotgun, and miscellaneous ammunition. In another bedroom they found $1,553, an AK-47 assault rifle, a .380-caliber pistol, and more ammunition. Petitioner was arrested, and he admitted that the money found in the television was the proceeds from cocaine sales. He also admitted he assisted his brother and Cruz with cocaine

distribution.

Petitioner pled guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine. He was sentenced to 140 months in prison.

### III. Discussion

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

Even if counsel is proven deficient, a petitioner must prove prejudice. To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694). "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong." *Id.* "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'" *Id.* (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

When a petitioner argues his guilty plea was not voluntary due to the ineffective assistance of counsel, he must show that his counsel's advice to plead guilty fell below the range of competence demanded of an attorney in a criminal case. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994). Further, he must show prejudice by

establishing "but for his counsel's alleged erroneous advice, he would not have pleaded guilty but would have insisted upon going to trial." *Armstead*, 37 F.3d at 206.

A. **Ex Post Facto**

(1) Procedural Bar

Petitioner claims his counsel was ineffective for failing to argue that the two-level sentence enhancement for maintaining a drug house was an ex post facto violation. The Government argues this claim is procedurally barred because Petitioner raised the claim on direct appeal and the claim "was sufficiently developed to squarely put it before the court. Thus, when the Court dismissed the appeal, it had considered the ex post facto argument." (Resp. at 8 n.3.)

The record shows, however, that on direct appeal the Government filed a motion to dismiss the appeal arguing that "the record is undeveloped on the merits of [Petitioner's] allegations. Under these circumstances, this Court routinely dismisses appeals without prejudice to the appellant's ability to raise the claims in a motion under 28 U.S.C. § 2255. It should do the same here." (*United States v. Segura-Gomez*, No. 13-10008 (5th Cir. 2013) Gov.'s Mot. to Dismiss at 1.) On November 5, 2013, the Fifth Circuit granted the Government's motion to dismiss and did not consider the merits of Petitioner's claims. The Court therefore declines to recommend dismissal of Petitioner's claims as procedurally barred.

(2) Enhancement under § 2D1.1(b)(12)

Petitioner claims his counsel was ineffective for failing to object to the two-level enhancement for maintaining a drug house because it was an ex post facto violation. Petitioner claims the enhancement under § 2D1.1(b)(12) was imposed under the November 1, 2011 edition of the sentencing guidelines, but that he had been involved in the conspiracy since early 2011, or

2010.

The enhancement for maintaining a drug house under § 2D1.1(b)(12) was added to the sentencing guidelines on November 1, 2010. *See* Supplement to the 2010 Guidelines Manual (effective date November 1, 2010). Although § 2D1.1(b)(12) was amended in 2011, the amendment only made clarifications, and did not make substantive changes. *United States v. Ramos*, 509 Fed. Appx. 317, 318 (5th Cir. 2013). Further, for ex post facto purposes, the last date of the conspiracy is the offense date. *See* USSG § 1B1.11, cmt. 2. Petitioner maintained a drug house at the time the drug conspiracy concluded, which was on or about December 14, 2011. (PSR ¶¶ 2, 13.) Petitioner's ex post facto claim is therefore without merit, and his counsel was not required to make meritless objections. *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).

**B.     Drug Quantities**

Petitioner claims his counsel was ineffective for failing to object to the drug quantities at sentencing.

(1)     Price of Cocaine

The PSR determined that the price of the cocaine during the conspiracy was $20,000 per kilogram. (PSR ¶ 15.) It then converted the $363,858 found at the Seedling Lane house to cocaine by dividing it by $20,000 to yield 18.19 kilograms of cocaine. This amount was added to the 436 grams of cocaine found at the house, for a total of 18.626 kilograms of cocaine. The PSR also attributed to Petitioner the 18 pounds of marijuana from the drug ledger found in the trash. For sentencing purposes, the 18.626 kilograms of cocaine was converted to marijuana and added to the 18 pounds of marijuana, for a total quantity of 3,733.2 kilograms of marijuana. This

resulted in a base offense level of 34. (PSR ¶ 23.)

Petitioner claims there is insufficient evidence to support a price of $20,000 per kilogram for the cocaine. In his petition, he claims the cocaine should be valued at $24,000 to $25,000 per kilogram. In his reply, he claims the price should be $25,000 per kilogram. He states the valuation of $25,000 per kilogram would reduce the amount of cocaine resulting from the conversion of the $363,858 to cocaine, and thereby reduce his base offense level.

To support his claim that the cocaine should have been valued at $25,000 per kilogram, Petitioner cites the DEA agent's affidavit in support of the criminal complaint. In that affidavit, the agent stated a confidential source bought one kilogram of cocaine from co-defendant Cruz for $24,000. (Gov't Appx. at 6.) In another affidavit, however, the agent stated the price for one kilogram of cocaine in the Dallas area varied from $18,000 to $24,000. (*Id.* at 24.) Petitioner submits no evidence that the price of the cocaine during the conspiracy was $25,000 per kilogram.

Even if the Court were to accept Petitioner's claim that the price was $25,000 per kilogram of cocaine, however, it would not change his base offense level. If the $363,858 is converted to cocaine using a price of $25,000 per kilogram, it results in 14.554 kilograms. Added to this 14.554 kilograms is the 0.436 kilograms found at the Seedling house on the date of arrest, which results in 14.99 kilograms of cocaine. When this cocaine amount is converted to its marijuana equivalent, the marijuana amount is 2,998.04 kilograms. *See* § 2D1.1 Drug Equivalency Table. An additional 8.165 kilograms of marijuana was also added from the ledger found in the trash showing sales of 18 pounds of marijuana. This results in a total of 3,006.229 kilograms of marijuana. Under the guidelines, 3,006.29 kilograms of marijuana results in an

offense level of 34, which is the same offense level that applied to Petitioner when the PSR valued the cocaine at $20,000 per kilogram. *See* § 2D1.1 Drug Quantity Table. Petitioner has failed to show that his counsel was constitutionally ineffective for failing to object to this drug calculation.

### (2) Quantity of Marijuana

Petitioner claims his counsel should have objected when the district court found that the weight of the 18 pounds of marijuana from the drug ledger was immaterial because it did not change the guidelines. Under the PSR, the 436 grams of cocaine and the $363,858 found at the Seedling house were converted to 3,725.780 kilograms of marijuana. Under the guidelines, if the amount of marijuana is over 3,000 kilograms but less than 10,000 kilograms, the offense level is 34. Therefore, adding the 18 pounds, or 8.165 kilograms, of marijuana to 3,725.78 kilograms of marijuana for a total of 3,733.945 kilograms of marijuana did not change the guidelines.

Petitioner again claims that the cocaine should have been valued at $25,000 per kilogram. If the cocaine had been valued at $25,000 per kilogram, the converted amount of marijuana would have been 2,998.064 kilograms prior to adding the 18 pounds of marijuana, which is under the 3,000 kilograms needed for a base offense level of 34. Petitioner claims his counsel should have argued that adding the 18 pounds of marijuana was material because it affected his offense level. As discussed above, however, Petitioner has submitted no evidence supporting a value of $25,000 per kilogram for the cocaine. Petitioner has failed to establish that he received ineffective assistance of counsel.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the petition to vacate, set-aside or

correct sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 26 day of June, 2015.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).